# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 23, 2013

## STATE OF TENNESSEE v. MICHAEL ALAN BURLESON

**Direct Appeal from the Circuit Court for Blount County**
**Nos. C20473 - 75    Tammy Harrington, Judge**

**No. E2013-00585-CCA-MR3-CD - Filed September 20, 2013**

The appellant, Michael Alan Burleson, pled guilty to three counts of aggravated burglary of a vehicle and was sentenced to a total of five years to be served on community corrections. Thereafter, the trial court revoked the sentences and ordered the appellant to serve the balance of his sentence in confinement. On appeal, the appellant contends the trial court abused its discretion by denying an alternative sentence. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are
Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal), and Mack Garner, Maryville, Tennessee (at trial), for the appellant, Michael Alan Burleson.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Betsy Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The record reflects that on February 10, 2012, the appellant pled guilty to three counts of aggravated burglary. Pursuant to the plea agreement, the trial court imposed sentences of two years, two years, and one year, which were to be served consecutively on community corrections.

On June 13, 2012, a violation of community corrections warrant was filed against the appellant, alleging that he failed to report and to attend a Moral Recognition Therapy (MRT) class. On September 20, 2012, and on January 7, 2013, amended warrants were filed, alleging that the appellant had amassed new criminal charges.

At the revocation hearing, Officer Brian Hensley with the East Tennessee Human Resource Agency testified that he was the appellant's community corrections supervisor. The appellant first reported on February 14, 2012, and he was required to report weekly. Additionally, as a condition of his release, the appellant was to attend MRT classes, which were designed to deal with alcohol and drug addiction.

Officer Hensley said that on April 25, 2012, he issued a written warning to the appellant regarding his failure to be employed, to complete thirty hours of community service work per week, and to be truthful with the community corrections officer. Officer Hensley said that the appellant never corrected his behavior. The appellant failed to provide proof that he was applying for jobs, and he failed to report as ordered.

Officer Hensley said that the appellant last reported on June 6, 2012. After that day, another probationer, Jonathan Beck, informed Officer Hensley that the appellant told him to tell Officer Hensley that the appellant would not report again. Officer Hensley waited five days to see if the appellant would report, but the appellant missed an appointment and an MRT class. Officer Hensley attempted to call the appellant, sent him text messages, and went by the appellant's house, but the appellant never responded. Thereafter, Officer Hensley filed a violation warrant.

Officer Hensley said that he later learned that the appellant had been charged with resisting arrest and possession of drug paraphernalia.

Officer Hensley said that he doubted the appellant could successfully complete an alternative sentence, noting, "You can't get through a program when you won't report and do your check-in."

On cross-examination, Officer Hensley said that he gave the appellant one drug test, which he passed. Officer Hensley talked to the appellant about his noncompliance, and the appellant promised to "do better" and "try harder." The appellant always seemed "laid-back [and] nonchalant."

Officer Hensley said that he doubted the appellant had "the will to do the program" because he would not report or get a job. He said that warning the appellant of an impending violation warrant had no effect on the appellant's behavior. The appellant said that he was

working but failed to provide proof. Officer Hensley surmised that the appellant's grandparents helped him financially.

Regarding the new charges, Maryville Police Officer Dwight William Porter, II, testified that on the night of September 17, 2012, he responded to a domestic disturbance call at 617 Ardmore Circle. The complainant said that the person who had caused the disturbance had fled in a white minivan. After Officer Porter left the residence, he saw a white minivan and activated his emergency lights to stop the vehicle. The van sped up, went through a traffic light, and drove into a parking lot. Officer Porter saw the appellant jump out of the passenger side of the vehicle and flee on foot. Officer Porter recognized the appellant and knew he had "three active warrants on file" for violation of probation. Officer Porter ordered the appellant to stop running and chased after him. Officer Porter searched the area for thirty minutes but was unable to find the appellant. Thereafter, Officer Porter filed a warrant against the appellant for resisting arrest.

Officer Porter said he later learned that the appellant had been staying at his grandmother's house, and he went to that location to serve the warrant on the appellant. After Officer Porter knocked on the door, the appellant attempted to flee. Officer Porter told the appellant that the house was surrounded and that he should not run. Officer Porter took the appellant into custody, patted him down, and found in his pocket a multi-color glass pipe. The pipe smelled like marijuana and had the residue of a green, leafy substance inside. Officer Porter said the pipe was warm, indicating that it had been recently smoked. He arrested the appellant for possession of drug paraphernalia.

The twenty-one-year-old appellant testified that he was single and had three small children by two different mothers. The appellant owed child support for all three children, and court dates were scheduled for his failure to pay child support. The appellant said that he had been on community corrections for approximately one year and was living at his mother's house. As a condition of his release, he was required to report once per week, attend MRT classes, perform thirty hours of community service per week, and seek employment by filling out a minimum of ten applications a week. The appellant's mother supported him.

The appellant acknowledged that Officer Hensley's testimony "was pretty accurate." He said that he had been "lazy and didn't really go through with the program, thought I could slide by [without being incarcerated]." He was incarcerated for 120 days following his arrest for possession of drug paraphernalia, which "kind of woke [him] up a little bit." The appellant and his mother fought because she had to support him. The appellant said that his mother was not happy with him and that at the beginning of June, she asked him to leave her home because he was not complying with the terms of his release. Thereafter, the appellant

left home, "never reported[,] and just went on doing [his] own thing." The appellant denied speaking with Beck, who was his "charge partner." He acknowledged that if he did not get a job and support his children, the court would be displeased with him and would send him to jail.

The appellant said that he had a general equivalency diploma and that he had previously worked in construction. The appellant said that he had been unemployed for two years because he was lazy. The appellant said that when he was a juvenile, he was adjudicated unruly. He was granted probation, which he violated twice. As a result of those violations, he was confined on weekends. He said that after being confined for 120 days after his most recent arrest, he was "taking things seriously." He wanted to comply with the terms of his release to avoid further incarceration. He asked the court for the chance to prove that he could successfully comply with an alternative sentence.

On cross-examination, the appellant said that his first arrest as an adult occurred one month after his eighteenth birthday. He received probation, which he claimed he completed successfully. He denied violating probation six months after it was granted. The appellant was later charged with two counts of burglary of a vehicle. He did not recall violating the probationary sentences he was granted for those offenses.

The appellant acknowledged that he had failed to appear in the instant case. He further acknowledged that he ran from Officer Porter, explaining, "I seen the blue lights and my adrenaline started to kick in, and I just jumped out and ran." The next day, the appellant was in possession of a marijuana pipe. He said that it was warm from being in his pocket, not from recent use.

The court found that the appellant violated the conditions of his community corrections sentence by failing to report, failing to attend MRT classes, and failing to obey the law by resisting arrest and possessing drug paraphernalia. The court found that despite being warned regarding his probation violation in April 2012, the appellant continued to violate the conditions of his release. The court stated that the appellant's youth and laziness did not excuse his behavior. Accordingly, the court revoked the appellant's community corrections sentence and ordered him to serve the balance of his sentence in confinement.

On appeal, the appellant challenges the trial court's refusal to grant an alternative sentence after revoking his community corrections sentence.

## II. Analysis

Initially, we note that the appellant acknowledges that his notice of appeal was

untimely filed and asks this court to waive the timely filing. Rule 4(a) of the Tennessee Rules of Appellate Procedure instructs that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from [.]" The trial court entered the order revoking his community corrections sentence on January 7, 2013. The appellant's notice of appeal was filed on February 28, 2013, rendering it untimely. Regardless, Rule 4 provides that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). We have chosen to waive the timely filing to address the appellant's concerns.

Generally, community corrections sentences are governed by the Tennessee Community Corrections Act of 1985. See Tenn. Code Ann. § 40-36-101, et seq. The Act provides as follows:

> The court shall . . . possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

Tenn. Code Ann. § 40-36-106(e)(4). A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that an offender violated the conditions of his suspended sentence. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The trial court's revocation of a community corrections sentence will be upheld absent an abuse of discretion. Id. An abuse of discretion occurs if the record contains no substantial evidence to support the conclusion of the trial court that a violation of community corrections has occurred. See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

The appellant concedes that he violated the terms of his release but maintains that due to his "change of heart in his approach to his responsibilities on community corrections, it would have been reasonable to try community corrections at least once more before ordering confinement for the balance of the sentence." As we stated earlier, the trial court was entitled to order the appellant to serve his original sentence in confinement after revoking his community corrections sentence. See Tenn. Code Ann. § 40-36-106 (e)(4). Moreover, this court has repeatedly cautioned "'that an accused, already on [alternative sentencing], is not entitled to a second grant of probation or another form of alternative sentencing.'" State v.

-5-

<u>Benjamin William Riffey</u>, No. E2011-00641-CCA-R3-CD, 2012 WL 762320, at *8 (Tenn. Crim. App. at Knoxville, Mar. 9, 2012) (quoting <u>State v. Jeffrey A. Warfield</u>, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999)).

### III.  Conclusion

In sum, we conclude that the trial court did not abuse its discretion by revoking the appellant's community corrections sentence and by ordering him to serve the balance of his original sentence in confinement.  Accordingly, we affirm the judgment of the trial court.

_____

NORMA McGEE OGLE, JUDGE
